**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1626

FRONT ROW MOTORSPORTS, INC.; ROBERT A. JENKINS,

        Plaintiffs - Appellees,

    v.

MICHAEL DISEVERIA; RONALD C. DEVINE,

        Defendants - Appellants.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Susan C. Rodriguez, Magistrate Judge. (3:22-cv-000138-SCR)

Submitted: February 12, 2025                        Decided: April 28, 2025

Before WILKINSON, GREGORY, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Wilkinson and Judge Gregory joined.

**ON BRIEF:** Anthony Roelof Coppola, Patrick Robert Corish, CHAP PETERSEN & ASSOCIATES, PLC, Fairfax, Virginia; Trevor Reid, Meredith L. Yoder, PARKER, POLLARD, WILTON & PEADON, PC, Richmond, Virginia, for Appellants. Daniel Stephen Trimmer, SKUFCA LAW PLLC, Charlotte, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

In this appeal, Michael DiSeveria and Ronald C. Devine challenge the district court's determination that they breached their agreement to indemnify Front Row Motorsports, Inc. for money it paid to resolve a collection action by a bank. Finding no reversible error, we affirm.

In December 2016, Front Row agreed to buy a NASCAR charter from BK Racing, LLC for $2 million.[1] As part of the sale, BK agreed to sell the charter "free and clear of all liens, encumbrances, mortgages or other claims . . . ." J.A. 647–48. Despite that assurance, BK had an outstanding loan from Union Bank and Trust which gave the bank a lien against all BK's "rights, title, and interest" in the charter. J.A. 71, 2158. BK did not disclose the lien or the outstanding loan to Front Row. And perhaps believing that "if you ain't first, you're last,"[2] Front Row closed the deal quickly without checking the public records for liens. So, Front Row acquired the charter without knowledge of Union Bank's lien.

The deal was structured for Front Row to pay $1 million up front and another $1 million six weeks later. Front Row paid the first $1 million at closing. But after it discovered BK's obligation to Union Bank and the lien, Front Row refused to pay the remaining $1 million unless the principals of BK agreed to indemnify Front Row from any claims by the bank. In January 2017, two of the three BK principals—Michael DiSeveria

---

[1] In 2016, NASCAR began a charter system. Race teams became eligible to compete in NASCAR Cup Series races by acquiring a charter. There are 36 charters total.

[2] TALLADEGA NIGHTS: THE BALLAD OF RICKY BOBBY (Columbia Pictures 2006).

2

and Ronald C. Devine—signed the indemnity agreement. The third, Wayne Press, didn't want to sign. Even so, BK insisted that Front Row accept the indemnity agreement with only DiSeveria's and Devine's signatures. Front Row ultimately agreed and paid the remaining $1 million to BK.

Before long, presumably because BK defaulted on its loan, Union Bank sued to collect on its outstanding loan and foreclose its lien on the charter. The bank claimed it was owed over $9 million. Front Row asked DiSeveria and Devine to defend and indemnify it per their agreement, but they refused. Eventually, Front Row settled with Union Bank for $2.1 million. Front Row demanded that DiSeveria and Devine reimburse it for the settlement amount, but they refused to do that, too. So, Front Row sued them in district court to recover the settlement payment.[3]

Employing "shake and bake"[4] legal maneuvers, DiSeveria and Devine denied they owed the $2.1 million. First, although they both signed the indemnity agreement, DiSeveria and Devine argued Press' refusal to sign relieved them of liability. Second, they argued that applying the agreement to Front Row's settlement with the bank would violate public policy. To advance that position, DiSeveria and Devine noted that one of the bank's claims was premised on Virginia's business conspiracy statute. They characterized that claim as a criminal act and insisted that indemnifying criminal acts offends public policy. Third, they

---

[3] The parties consented to have a magistrate judge "conduct any or all proceedings" under 28 U.S.C. § 636(c). J.A. 658.

[4] TALLADEGA NIGHTS: THE BALLAD OF RICKY BOBBY (Columbia Pictures 2006).

3

argued that there was no consideration supporting their agreement to indemnify Front Row. DiSeveria and Devine conceded they incurred an indemnity obligation but maintained that Front Row provided no consideration. Last, they argued that the $2.1 million settlement agreement for which Front Row sought indemnity was unreasonable.

After discovery, both parties moved for summary judgment. The district court denied DiSeveria and Devine's motion but granted Front Row's in part. It held that under North Carolina law, the indemnity agreement was valid and enforceable, and DiSeveria and Devine were, therefore, obligated to indemnify and defend Front Row. The district court rejected DiSeveria and Devine's argument that Press' failure to sign the agreement relieved them of liability for three reasons. First, the contract does not make Press' assent a condition precedent. Second, there were no other communications suggesting that Press' agreement was a necessary component of the agreement. And third, DiSeveria and Devine's arguments conflicted with the indemnity agreement's merger clause.

The district court also found DiSeveria and Devine's public policy argument unpersuasive: Union Bank's lawsuit was a civil action related to loans and security interests, not an action seeking indemnification for criminal acts. And the court rejected DiSeveria and Devine's argument that Front Row did not provide consideration. It agreed with Front Row that its promise to forebear its setoff rights, and Front Row's payment of the second $1 million after learning about the Union Bank outstanding loan and lien, provided adequate consideration.

4

Last, the district court denied summary judgment on DiSeveria and Devine's claim that the settlement was not reasonable. So, the case proceeded to a bench trial on that lone remaining issue—was Front Row's $2.1 million settlement with the bank reasonable?

At the end of the trial, the district court concluded that, under North Carolina law, the settlement between Front Row and Union Bank was both reasonable and made in good faith. Therefore, the court found DiSeveria and Devine jointly and severally liable for the $2.1 million settlement price, plus pre- and post-judgment interest. The court reasoned that Front Row faced a substantial risk of over $9 million in liability from the Union Bank suit. And it observed that Devine had previously proposed settling with Union Bank for $4 million in 2017, and $2.75 million in 2018—both substantially more than what Front Row actually settled for.

DiSeveria and Devine appealed, arguing the district court erred in concluding that the indemnity agreement was a valid contract, and that the settlement was reasonable. On their first point, we review summary judgment decisions de novo. *See Wilson v. Prince George's Cnty.*, 893 F.3d 213, 218 (4th Cir. 2018). Summary judgment is appropriate if, construing all evidence in favor of the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Issues of contract interpretation present questions of law, which we review de novo. The issue of whether a valid contract exists also presents a question of law, which we review de novo." *Brown v. Between Dandelions, Inc.,* 849 S.E.2d 67, 70 (N.C. Ct. App. 2020) (internal citations omitted).

5

Applying that standard of review, the district court did not legally err in concluding that the indemnity agreement was enforceable. Nothing in the text of the indemnity agreement indicates that Press' assent was a condition precedent for DiSeveria and Devine's liability. And the merger clause precludes any argument otherwise. Likewise, DiSeveria and Devine point to no North Carolina authority holding that indemnifying a civil conspiracy claim violates the state's public policy.

As to whether the settlement was reasonable, we afford the district court substantial deference. "Following a bench trial, we review a district court's factual findings for clear error and its legal conclusions de novo." *Brundle ex rel. Constellis v. Wilmington Tr., N.A.,* 919 F.3d 763, 773 (4th Cir. 2019) *(citing Nat'l Fed'n of the Blind v. Lamone,* 813 F.3d 494, 502 (4th Cir. 2016)).

In finding the settlement reasonable, the district court relied on evidence in the record that Front Row faced an over $9 million risk to the bank and Devine's prior settlement offers for more than $2.1 million. Under our standard of review, the district court did not clearly err in concluding that Front Row's settlement with the bank was reasonable.

For these reasons, the district court's decision is,

*AFFIRMED.*

6